DONALD TERRELL, Plaintiff-Appellee, *v.* JOSEPH LOVELACE *et al.,*
Defendants-Appellants.

Second District   No. 77-489

Opinion filed October 27, 1978.

Donald W. Ford and Gerald Sheridan, both of Wheaton, for appellants.

George Lindner, of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendants appeal from a judgment entered against them in a personal injury action arising out of an automobile accident.

At the time of the accident the weather was clear and the pavement dry. The plaintiff was traveling south on Route 47, driving a pickup truck. The defendant, Lovelace, was traveling north on Route 47, driving an empty school bus. There was a yellow flashing light for north-south traffic on Route 47 and there was a red flashing light for east-west traffic on Keslinger Road, Route 47 thus having the preference.

At the time of the collision between the two vehicles the school bus was in the process of making a left hand turn from Route 47 onto the east-west road known as Keslinger Road. To the north of Keslinger Road, Route 47 rises about 12 to 13 feet, the crest of the elevation being about 400 feet north of the intersection of Route 47 and Keslinger Road. The speed of the plaintiff's vehicle is somewhat disputed. The defendant testified he felt the plaintiff was going "somewhere between 50 and 60 miles per hour as he approached the intersection." The plaintiff testified he was going about 40 miles an hour when he came over the crest of the hill. Kesler, a witness traveling behind the school bus going north, thought the plaintiff's speed was about 35 to 40 miles per hour. Carl, a witness traveling behind

the plaintiff, going south, said the plaintiff was "going pretty slow." The school bus was 30 feet long and according to the Lovelace's testimony was in first gear at the time he began making his left turn and the bus would only go about 5 miles per hour in first gear. His speed at the time of making the turn was disputed and it was conceded even by the defendant, Lovelace, that he did not stop before making his left turn. Lovelace testified that he did not see the plaintiff's truck coming toward him at the moment he started his left turn and did not observe the plaintiff until after he had committed his bus to the turn. His theory was that the hill hid the plaintiff from his view at the point of the intersection. While Lovelace testified that he activated his left turn signal about 100 to 150 feet before entering the intersection, the plaintiff said the turn signal was not operating and the two eyewitnesses, Kesler and Carl, testified they did not see the left turn signal operating.

The plaintiff testified he first observed the school bus coming toward the intersection when he was "coming up the hill," presumably just north of the crest of the hill, at which time the bus was about 100 feet south of the intersection, traveling north, in the northbound lane. The bus was traveling somewhat slower than highway speed and no signal was given, but when the plaintiff was "almost at the intersection," he testified (about 100 feet away), the bus turned left in front of him.

The plaintiff testified he immediately applied his brakes but could not avoid striking the bus, the impact being just behind the right front door of the bus. There was evidence that the pickup truck was loaded beyond its stated capacity with cement blocks. The plaintiff sought and was granted a motion *in limine* to bar the defendant, Lovelace, from commenting on this fact or making any argument about it based on a statutory violation.

As a result of the collision the plaintiff suffered a permanent injury to his left wrist resulting in a loss of flexion—his flexion after complete healing being about 45 degrees as compared with a normal flexion of between 70 and 90 degrees.

After a jury trial the jury awarded the plaintiff the sum of $58,000 as damages.

In this appeal, the defendants contend the court erred in (1) not directing a verdict for the defendants on the ground that the plaintiff was guilty of contributory negligence as matter of law; (2) in admitting testimony regarding a certain experiment where the conditions of the experiment were not the same as those at the time of the accident; (3) that certain testimony of a State of Illinois highway engineer who testified in interpreting a drawing should not have been admitted because no proper foundation was laid; (4) that it was error to preclude the defendants from raising a statutory overweight violation by the plaintiff's truck; (5) that the jury should not have been instructed regarding future loss of earnings

where the plaintiff actually sustained no diminution in wages after he returned to work, and (6) that the amount of the award was excessive.

■■ The defendants' first contention is subject to a technical objection in that their oral motion for a directed verdict, made at the close of the plaintiff's case, was not renewed at the close of all the evidence. It has been held in numerous cases in this State that where the defendant, after a motion for a directed verdict is overruled, proceeds to present his defense on the merits and does not renew his motion for a directed verdict at the close of all the evidence, the motion is waived. In *Langan v. Enos Fire Escape Co.* (1908), 233 Ill. 308, 312, the court said:

> "It is next contended that the court erred in refusing to direct a verdict of not guilty. But that question cannot be considered, for the reason that it was not preserved as one of law. The defendant, at the conclusion of the evidence for the plaintiff, requested the court to give an instruction directing a verdict of not guilty, and the court refused to give it, to which ruling the defendant excepted. The defendant, however, did not stand by the motion but proceeded to introduce evidence, which was a waiver and abandonment of the motion and request. [Citations.] The motion and request for an instruction were not renewed at the close of all the evidence, and there is no ruling of the court to be reviewed."

To the same effect is *Reavely v. Harris* (1909), 239 Ill. 526, 528, where the court said:

> "The practice is well settled in this State that in order to preserve the question for review in this court, as a question of law, whether the evidence fairly tends to support the plaintiff's cause of action, a motion in writing for a directed verdict, accompanied by an instruction to find for the defendant, must be presented to the court by the defendant at the close of all the evidence, and it is not sufficient to make such motion and present such instruction at the close of the plaintiff's testimony, where, after the defendant's motion has been overruled, he proceeds to introduce proofs."

This rule was followed in *Black v. Texas Co.* (1928), 247 Ill. App. 301; *Hoobler v. Voelpel* (1927), 246 Ill. App. 69, and *Drzewiecki v. McCaskill* (1976), 41 Ill. App. 3d 627, 631, where the court said:

> "The first issue presented for review by plaintiff is whether plaintiff was guilty of contributory negligence as a matter of law. We need not consider this issue because neither party moved for a directed verdict at the close of all the evidence and the case was presented to the jury on the factual issue of negligence vs. contributory negligence."

■■ In any event, even if properly preserved for review by this court, the result would be the same for we find no substance behind the motion. The

plaintiff's evidence did not by any means establish contributory negligence on his part. The accident occurred at about 2:30 p.m. on a clear, bright day and two disinterested witnesses, as well as the plaintiff, testified they did not see any left turn signal being activated by the defendant. The plaintiff was, according to the evidence, traveling within the speed limit of 45 miles per hour at that point and since Lovelace had him in clear view the plaintiff had a right to expect that Lovelace would not suddenly turn in front of him. Clearly, in proceeding as he did, under these circumstances, the plaintiff was not guilty of contributory negligence as a matter of law.

The experiment complained of was, in our opinion, sufficiently close to the actual facts and circumstances of the accident to come within the general rule pertaining to experimental evidence as stated in *Schofield v. Crandall, Inc.* (1974), 24 Ill. App. 3d 101, 104:

> "It is clear, therefore, that generally speaking evidence of experiments made out of court is admissible if conditions of the experiment are believed by the trial court to be substantially similar even though not identical to the actual circumstances of the case."

As was indicated in 29 Am. Jur. 2d *Evidence* §820 (1967):

> "It is a matter peculiarly within the discretion of the court to decide the admissibility of such evidence in the light of all the surrounding facts and circumstances."

■■ In the case before us the defendants object to an experiment designed to refute the contention that the plaintiff's vehicle was not visible to Lovelace as it approached him until too late for him to realize his danger in making the left turn. Defendant Lovelace contended that because of the hill to the north of the intersection he was not aware of the oncoming truck until he had committed himself to a left turn with his slow moving vehicle. The plaintiff, to counter this contention, arranged for a deputy sheriff to stand in the middle of the intersection in question while the plaintiff drove a vehicle similar to his pickup truck south from beyond, up and over the hill in question, approaching the intersection. At a point where, the witness testified, he could observe about 18 inches or so of the top part of the vehicle, he signaled the plaintiff who then stopped the truck. The distance was then measured by a steel tape and found to be some 735 feet. Lovelace objected that the vehicle was not the same, it being 2 inches taller, there was no definite evidence as to the height of the deputy sheriff, compared with the elevation of the driver of the school bus when seated in the driver's seat and there may have been a difference in the inflation of the tires or the load on the pickup truck may have depressed it below the height of the experimental vehicle. It seems to us, however, that these rationalizations are meaningless where the

experiment showed results so overwhelmingly repudiating the defendant's theory. The small variations pointed out by the defendant could not account for his failure to see the approaching truck at a distance sufficient to warn him of his danger. Even if the plaintiff's approaching vehicle was first visible at a distance of 450 to 500 feet, and the crest of the hill was established as being 400 feet from the intersection, it is obvious that Lovelace had sufficient warning if he was keeping a careful lookout. In our opinion, the experiment was within the allowable limits of the variations from the actual conditions so as to be within the court's discretion as to admissibility. However, it was not seriously prejudicial to the defendants because even with allowance for error it tended to confirm other physical facts and the testimony of witnesses pointing toward negligence on Lovelace's part.

The testimony of the State highway engineer regarding the diagram of the road profile and the line of sight (6 feet 6 inches, the height of the bus driver sitting in the driver's seat), which indicated that Lovelace had visibility from the intersection for 1098 feet north, was not objected to when it was attempted to be introduced or on cross-examination or even at the time of redirect and recross-examination. At the conclusion of the highway engineer's testimony, defense counsel moved it be stricken and was heard on this motion in chambers. At that time he objected to the foundation of the testimony and his motion was denied. The trial court did not state the reason for his ruling but whether it was on the ground that the objection was not timely made or that there was adequate foundation for the introduction of the diagram and the engineer's testimony concerning it, we think the ruling was proper on the basis of the record before us.

■■ Regarding the argument that defendant should have been allowed to raise the statutory overweight violation, the ruling of the trial court precluding it was, we think, correct. It was not disputed that the pickup truck was actually equipped to carry a heavier load than it was licensed for and it was only a technical violation in the type of license issued. The license actually issued did not contemplate the vehicle's actual load capacity, the vehicle having overload springs, oversized tires and oversized wheels and a heavy suspension system to accommodate heavier loads than it was licensed for. Since there was no showing that the technical overweight factor in any way contributed to making the vehicle's speed dangerous or the brakes not responsive, we think this evidence was properly excluded as being irrelevant.

■■ As to the instruction on loss of earnings, we think there was sufficient evidence from the testimony of the plaintiff and his employer that the plaintiff's *annual* wages were less on account of having to drive a different kind of vehicle after the accident than they were before the accident, to

justify the instruction. While the plaintiff's rate of pay was as much as or more than before, his prospective earnings on an annual basis, because of the loss of overtime and lay offs on account of bad weather, would be reduced as compared with his pre-accident earnings. We think there was enough testimony to justify an instruction which would enable the jury to consider whether or not lost earnings were a proper element of damages.

■■ The defendants claim the jury's award was excessive based on the approximate amount of $1600 in medical expense. However, the plaintiff lost 6 months' wages, which amounts to close to $10,000, he incurred considerable pain and suffering and he was apparently permanently restricted as to certain activities. He also faces a long-term decrease in his annual net earnings. On the basis of these facts we cannot say that the jury's award was excessive to a significant extent.

Therefore, the judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

GUILD and NASH, JJ., concur.