GEORGE C. HOLSAPPLE, Plaintiff-Appellee, *v.* COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Fifth District   No. 82—59

Opinion filed February 10, 1983.

James B. Moses, of Smith, McCollum, Riggle & Moses, of Flora, for appellant.

Kenneth L. Bast, of Kidwell, Cummins & Bast, of Mattoon, for appellee.

JUSTICE KARNS delivered the opinion of the court:

A jury in the circuit court of Jasper County returned a verdict in favor of plaintiff, George C. Holsapple, and against defendant, Country Mutual Insurance Company, in the sum of $9,928. The jury's award was remitted to $8,613, and then further reduced by $50, the amount deductible under the insurance policy. The court entered judgment in the sum of $8,563 and costs and denied defendant's post-trial motions.

On appeal, defendant contends that the trial court erred in denying the post-trial motions because plaintiff failed to prove that vandalism, the risk covered in the farm owners policy issued to plaintiff, was the cause of his loss. Defendant further contends that reversible error was committed by plaintiff's counsel's questioning of witnesses concerning irrelevant matters.

Plaintiff and his wife operated a farm approximately two miles west of Newton in Jasper County, Illinois. The farm was used, in part, for the raising of hogs in a confinement system in which the hogs were farrowed and raised entirely in enclosed structures. The envi-

ronment for these structures which included a sow house, farrowing house and nursery, was controlled by heaters in the winter and electric exhaust fans which pulled in cool air in the summer.

On July 4 and 5, 1979, there were 270 hogs in plaintiff's nursery building. At approximately 4 o'clock on July 5, 1979, plaintiff was called to the nursery by his wife. When he arrived, plaintiff discovered that the lights and ventilating fans in the building were off and 197 hogs were dead. Plaintiff then flipped the breaker switches in the building and the lights and fans began operating.

After discovering the dead hogs, plaintiff telephoned Raymond Wartsbaugh, his electrician and his wife's uncle, who undertook to "check things." Plaintiff also contacted his insurance agent who came out to the farm later that evening.

On the evening of the loss, plaintiff inquired of his insurance agent as to the extent of his coverage. The hogs were insured as personal property in an insurance policy issued by defendant, Country Mutual Insurance Company. A representative of that company told plaintiff that there would be no coverage unless the loss resulted from malicious mischief or vandalism. From this discussion plaintiff first learned of the limitation in the coverage. Plaintiff thereafter called the sheriff's department to report vandalism.

Jack Landreth, a deputy sheriff, testified that he responded to a 7:45 p.m. report of "possible vandalism" on July 5, 1979, at plaintiff's farm. On cross-examination, he stated the plaintiff told him that he could not remember the position of the breaker switches. The deputy also testified that he did not find any evidence of vandalism.

Raymond Wartsbaugh testified that on July 5, 1979, plaintiff asked him to check the electricity at the nursery on the farm. Wartsbaugh stated that he checked the breakers, looked at all the wiring and pulled the amperage on all fans. He testified that he checked the electrical wiring and breaker switches with an amp meter and volt meter. His opinion was that there were no defects with the electrical system.

Approximately two weeks after the loss, defendant hired Carl Mitchell, a professional electrician, to check the wiring, switches and fans. He also used an amp meter and volt meter and found no defects.

Plaintiff testified that the temperature on the day of the loss was about 90 degrees. He stated that during January, February or March, 1978, humidity inside the nursery building caused the breakers to trip and the ventilating fans stopped operating. He further testified that on another occasion a packed feed auger caused the breaker box to

trip.

Plaintiff stated that after the breakers tripped because of the high humidity, he and Raymond Wartsbaugh reworked the electrical system and hooked one fan to a breaker by itself. They felt that if anything happened that would cause a fan to go off, the other fans would continue ventilating the nursery.

Plaintiff testified that when a breaker is thrown by an electrical short it will go half way down and in order to put it back in use one must pull it down and then push it up. If the short still exists, the breaker will trip again. Plaintiff stated that when he entered the nursery he noticed that two breakers were thrown and that he pushed them up and they did not trip again. On cross-examination, plaintiff admitted that he did not know the position of the switches when he discovered the loss, but he concluded that they must have been all the way down because his electrician and one hired later by defendant did not find any defect in the electrical system.

Plaintiff acknowledged that Bill Finn and his three sons, who were erecting a grain bin, a member of the Esker Construction Company that was enlarging the sow house, and Jeff Hawkins, who delivered a load of feed to the sow house, were present on the farm on the day of the loss. Also present on the farm that day were plaintiff's wife's brother, sister-in-law and their two sons, ages eight and nine. No evidence was introduced suggesting that any of these individuals had turned off the switches or had been in the nursery on the day of the incident.

Plaintiff brought suit upon the vandalism and malicious mischief provision in his insurance policy covering the hogs. The jury returned a verdict in favor of plaintiff and against defendant and judgment was entered. Defendant moved for judgment notwithstanding the verdict and for a new trial, both of which were denied. It is from the denial of these post-trial motions that this appeal is taken.

Defendant's first contention is that the trial court's judgment should be reversed because the jury's verdict is not supported by the evidence. Specifically, defendant maintains that plaintiff should not be allowed to recover on his insurance policy because he failed to prove that the death of his hogs was due to vandalism or malicious mischief as required under his policy.

■ In order that there may be recovery on the policy, the loss of or injury to the insured livestock must result from the particular peril against which the insured is indemnified. (*Laschmett v. Country Mutual Insurance Co.* (1961), 29 Ill. App. 2d 281, 172 N.E.2d 394.) The peril insured against in the present case is loss by vandalism or mali-

cious mischief. Proof that the loss occurred by any other means would preclude recovery under the policy.

Plaintiff based his claim for recovery on circumstantial evidence that some unidentified person turned off the electrical breakers which controlled the ventilating fans in the nursery and this act caused the hogs to suffocate. Plaintiff did not introduce any eyewitnesses or other direct evidence in support of his claim. Instead, plaintiff maintains that because he has refuted other plausible explanations for the mishap, vandalism is the only remaining alternative.

In ruling on defendant's motion for a directed verdict, the court employed a two-part analysis to determine the sufficiency of the evidence. First, the court reviewed the evidence and found that the breakers were tripped by human agency. This conclusion was based on plaintiff's expert testimony which revealed that there was no defect in the electrical system. The second and more difficult question for the court was whether the tripping of the breakers was done as an act of vandalism or malicious mischief rather than by accident. Although the court admitted that there was very little evidence, the court permitted the case to go to the jury on the basis that plaintiff showed that those persons authorized to be on the premises did not trip the breakers.

The present case is strikingly similar to *Cole v. Country Mutual Insurance Co.* (1972), 5 Ill. App. 3d 335, 282 N.E.2d 216, cited by plaintiff. In *Cole*, plaintiff sued on an insurance policy covering his hogs from direct loss from vandalism or malicious mischief when they suffocated after the electricity went off in the farrowing house. The trial court found that vandalism caused the loss, and the appellate court affirmed the judgment.

Plaintiff, in *Cole*, successfully rested his case on circumstantial evidence. Testimony was introduced revealing that the force needed to pull down the master electricity power switch was such as to make it unlikely that it was done accidentally. The validity of this conclusion was strengthened by the fact that the power switch was 5½ to 7½ feet off the ground. Furthermore, plaintiff presented evidence indicating that one of the doors of the hog building was opened. The court held that the evidence taken as a whole proved that a wilful, intended act by a human agency caused the loss, and therefore allowed plaintiff to recover under the policy.

Defendant maintains that the present case is more readily aligned with *Lashmett v. Country Mutual Insurance Co.* (1961), 29 Ill. App. 2d 281, 172 N.E.2d 394, in which the court rejected plaintiff's insurance claim. In *Lashmett*, plaintiff-farmer had to prove that his hogs

died as a result of vandalism in order to comply with the terms of his insurance policy. Plaintiff claimed that his hogs were poisoned in an act of vandalism even though other plausible explanations were presented. The court found, however, that there was a complete void of evidence suggesting that the hogs were wilfully and maliciously poisoned and therefore reversed the judgment of the trial court which allowed plaintiff's claim.

In the case before us, evidence was introduced suggesting several possible explanations for the electrical failure in the nursery. There was testimony that dust from the feeding system could cause the breakers to trip as could a lack of oil or too much oil or a rough spot on the bearings. According to plaintiff, the breakers had tripped once before on a humid day. Plaintiff further testified that a packed feed auger also had tripped the breakers previously.

Additional testimony, however, revealed that the above explanations were not likely causes of plaintiff's loss. Raymond Wartsbaugh testified that he checked the breaker switches and fans and found nothing wrong with them. Carl Mitchell testified that he examined the breaker switches and fans at defendant's request and also did not find any problem. He stated that he tried to overload the breakers but was unable to do so. He further stated that in his opinion pranksters had turned off the breaker switches.

Under Illinois law, defendant is entitled to judgment notwithstanding the verdict when all the evidence, viewed in its aspect most favorable to plaintiff, so overwhelmingly favors defendant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) The evidence in the instant case suggests that the breakers were tripped by the wilful act of some person rather than by mechanical failure. Furthermore, the fact that those persons authorized to be on the farm stated that they did not pull the breaker switches supports the conclusion that the breakers were not accidentally pulled. The foregoing circumstantial evidence is sufficient proof to sustain the jury's verdict that vandalism and malicious mischief caused plaintiff's loss.

Defendant's second contention on appeal is that reversible error was committed when plaintiff's counsel persisted in questioning witnesses concerning irrelevant matters. Defendant maintains that such questioning created an unwarranted impression in the minds of jurors that vandalism caused plaintiff's loss.

The questioning referred to by defendant consisted of plaintiff's counsel's inquiry into previous instances of vandalism or theft in the vicinity of plaintiff's farm. Defendant made several objections to

plaintiff's questions on the basis that such instances of vandalism were unrelated in time or place to the loss suffered by plaintiff. Despite defendant's objections, each of which was sustained by the court, plaintiff continued this line of questioning and thus introduced improper testimony.

A reviewing court will not find error to be reversible unless it is demonstrated that the error was substantially prejudicial and affected the outcome of the trial. (*Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 388 N.E.2d 770.) Although we find plaintiff's counsel's questioning to be improper, we conclude that the admission of this testimony was not prejudicial error.

For the foregoing reasons, the judgment of the circuit court of Jasper County is affirmed.

Affirmed.

HARRISON, P.J., and KASSERMAN, J., concur.