DON MILLER *et al.*, Plaintiff-Appellee and Cross-Appellants, *v.* BOARD OF EDUCATION, DISTRICT 189, Defendant-Appellant and Cross-Appellee.

Fifth District   No. 81—682

Opinion filed September 12, 1983.

Edward Neville, of East St. Louis, for appellant.

Charles J. Kolker, of Belleville, for appellees.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Defendant, the Board of Education of District 189, appeals from a judgment against it in the amount of $107,887.96 entered by the circuit court of St. Clair County in a contract action brought by teachers of the district. For the reasons hereinafter set forth, we affirm in part, reverse in part and remand.

Plaintiffs originally filed suit on August 29, 1969. The complaint consisted of 396 separate counts, one for each teacher in the district. The plaintiffs made claims for salary shortages which occurred over a period of years beginning with the fall of 1959 and ending with the 1966-67 school year.

On defendant's motion, the original complaint was dismissed in 1972 for failure to attach a written contract. Plaintiffs immediately filed an amended complaint, adopting their previous complaint and attaching an affidavit which stated the reason for their failure to include the contract. The affidavit explained that the contract between the board and the teachers was based on the minutes and resolutions of board meetings which occurred during the years in question. It stated that the defendant alone had access to these minutes and, thus, plaintiffs were unable to attach them to the complaint. Defendant moved to dismiss on the same grounds as before.

There was very little activity in the case during the next six or seven years. Discovery proceeded at a slow pace and included various motions to produce submitted by plaintiffs and a request for admission of facts and genuineness of documents, also submitted by plaintiffs. Defendant did not respond to these requests and ignored interrogatories propounded during this period.

Then, late in 1979, the activity accelerated. In August a hearing was held at which the court denied defendant's motion to dismiss on statute of limitations grounds and denied plaintiffs' motion to proceed as a class action. However, it granted defendant's motion to dismiss based on *laches*, thus dismissing all claims arising between the fall of 1959 through the spring of 1963. On May 14, 1980, the court entered an order denying plaintiffs' motion to strike defendant's pleadings and for judgment of default against defendant. Plaintiffs had so moved because of defendant's conduct with regard to discovery.

Several pretrial conferences took place in the ensuing months. On October 6 the plaintiffs submitted request for admission of facts and genuineness of documents. At a pretrial conference in October, the trial judge informed the parties that all remaining plaintiffs who intended to proceed with their cause of action would have to appear at

a hearing on June 15, 1981, for roll call. On June 29, when 171 plaintiffs had failed to appear for the "show-up" conference, the judge entered an order dismissing their claims.

After these dismissals and the dismissals based on *laches*, a total of 96 plaintiffs remained to proceed with the cause of action.

In the interim, on June 15 and again on June 22, 1981, plaintiffs presented two additional requests for admission of facts and genuineness of documents. The defendant did not respond to these. At a hearing on July 14, 1981, the plaintiffs were granted leave to file an amended complaint. Defendant's motion to dismiss was denied and a hearing date was set for the existing plaintiffs. Also at this time, the trial court granted the plaintiffs' motion for sanctions against the school board for failing to respond to discovery attempts. However, it set aside the $200 fine in return for the board's guarantee of future cooperation.

On August 3, 1981, a hearing was to be had on the merits. As the proceedings began, plaintiffs moved for summary judgment. They based their motion on exhibits which had been included in their discovery requests. Plaintiffs maintained that the exhibits constituted admissions by defendant because defendant failed to deny their truth or authenticity in pretrial discovery. Plaintiffs claimed that, from these exhibits, it was apparent that the base salary which was agreed to between the board and the teachers was not the base salary which was actually paid to them. The court construed the motion for summary judgment as a motion for directed verdict and entered a directed verdict for the teachers in the amount of $106,635. Plaintiffs' motion for interest and further sanctions was denied, as was a motion to reinstate the 171 plaintiffs who had been dismissed in the "no-show" order. However, the judge did give defendant five days to produce documentation which would disprove plaintiffs' contentions.

The hearing was continued on August 12, 1981. The defendant produced payroll records for 19 teachers and a handwritten survey sheet which it said proved that the amounts actually paid to the teachers were different than the amounts which were indicated on the personal history sheets. Essentially, defendant hoped to discredit the figures relied upon by plaintiffs by presenting conflicting figures for the same pay period. The court ordered the plaintiffs to file affidavits concerning the 19 teachers listed in defendant's survey. It allowed defendant time to respond to plaintiffs' affidavits, but made it clear that its final rulings as to these 19 plaintiffs would be the basis for its ruling on all 96 plaintiffs. On the 14th day of September, plaintiffs submitted detailed affidavits regarding the 19 teachers. In these affi-

davits the teachers set forth their level on the salary schedule, the base salary actually paid them, and the other monies they received for performing such duties as coaching, playground monitoring, etc. Defendant introduced counteraffidavits of the personnel director, one for each of the 19 teachers, which were supposed to dispute plaintiffs' figures. The hearing resumed on October 28 at which time the parties explained their positions. In an order entered on November 25, the court decided in favor of plaintiffs and set the amount of recovery, according to computation sheets submitted by plaintiffs' attorney, at $107,887.96.

On December 18, 1981, defendant filed its notice of appeal. The plaintiffs then cross-appealed.

On appeal, the school board has presented two issues for review. The first of these is whether the court erred in granting a motion for directed verdict based upon a motion for summary judgment. The second issue, closely related, is whether the court erred in allowing evidence by affidavit in lieu of plaintiffs' appearance at trial.

■■ ■ At the hearing on August 3, 1981, the plaintiffs moved for summary judgment based on information contained in four exhibits which they deemed admissions by defendant. Exhibit No. 1 consisted of copies of minutes and resolutions of board meetings which occurred during the years in question. Plaintiffs did not include minutes of all the board meetings, of course, but only minutes of those meetings which contained the final negotiations and formal approval of contract terms and salary schedules. These minutes submitted by plaintiffs constitute the record of the contract between the teachers and the school board, and it is these on which the trial judge relied. As plaintiffs argued, the figures contained in the salary schedules therein represent the base salary figures bargained for and agreed to by the parties, *i.e.*, the salary they should have received.

Exhibit No. 3 consisted of personal history sheets kept by the school district, one for every plaintiff. Each sheet contained data about the teacher which would be relevant to the district's administration, including the teacher's level of education and years of teaching experience. Most significantly, the history sheets were updated yearly by noting in a special column the new base salary for the teacher and any salary increases he or she received. Plaintiffs claim that this column of figures represents the amount they actually received from the school district.

Exhibits Nos. 2 and 4, salary schedules and a copy of their July 22, 1981, request to admit the genuineness of documents and facts therein, merely served as further confirmation of exhibits Nos. 1 and

3.

Both of these critical exhibits (the personal history sheets and the board meeting minutes), were included in various discovery requests made to the board by plaintiffs, entitled requests for genuineness of documents and admission of facts. Defendant's failure to respond to these requests, thus, constitutes admissions for purposes of a motion for summary judgment. Nothing subsequently offered by defendant disproved the material facts relied on by plaintiffs in these exhibits. The minutes which were offered as exhibits by defendant were from meetings which took place early in the spring of each year. These contained the year's salary schedule and a proposed salary schedule for the upcoming term. In the springtime, however, negotiations were still in progress. The possibility of salary increases and other contract adjustments were discussed for several months thereafter. Accordingly, nothing in the minutes from these spring sessions may be construed as a final agreement between the board and the teachers. Defendant's introduction of them to contradict the facts contained in plaintiffs' exhibits did not succeed. Likewise, the affidavits made by the district's personnel director only served to confirm the teachers' salary amounts after extras were added. Plaintiffs demonstrated by their own affidavits exactly how the district arrived at its total amount: by adding base salary plus monies received for duties such as coaching or summer school teaching. The defendant, therefore, presented nothing to contradict the base salary figures offered by plaintiffs. Since the court had before it the salary amount agreed to by the parties and the base amount actually received by the teachers—the latter always less, a judgment in their favor was correct. Our extensive examination of the record convinced us that, indeed, the teachers did receive less than the amount due them for the years in question. Thus, in our view, the instant case would have been most efficiently disposed of by granting plaintiffs' motion for summary judgment. Finding that no genuine issues of fact remained after the October 28 hearing and that plaintiffs were entitled to judgment as a matter of law, entry of summary judgment in their favor would have been proper. A court of review can affirm the judgment of a trial court if it is correct, even if the trial court's reason for the judgment was incorrect. (*U-Haul Co. v. Town of Cicero* (1980), 87 Ill. App. 3d 915, 919, 410 N.E.2d 286.) Since the court achieved the proper result here, we will affirm its decision although it was based on a construction of the motion as one for directed verdict.

■ In so holding, we have essentially disposed of defendant's second issue as well. In a motion for summary judgment, the court must

render judgment for the moving party if the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) At this stage in the proceeding, it was proper for the court to rely on affidavits rather than insisting that the numerous parties testify personally. We have very carefully reviewed the affidavits submitted. In comparing them to the documents already on file, it is plain that they confirm the point originally made by plaintiffs, *i.e.*, that the base salary paid to the teachers for the years in question was less than the amount the teachers had agreed to at the beginning of each year. Additional testimony on this point was unnecessary. Thus we find defendant's second contention is also without merit.

■ Plaintiffs' cross-appeal contained six issues for our consideration. Of those, three dealt directly with the imposition of sanctions on defendant for its refusal to cooperate in discovery. In the orders dated May 14, 1980, March 24, 1981, and October 28, 1981, the trial court refused to grant plaintiffs' motions for sanctions. Plaintiffs now seek to have these rulings reversed. They also argue that a prejudgment interest award is an appropriate sanction to impose under the circumstances of this case.

The imposition of sanctions for abuse of discovery rules and court orders is a matter within the trial judge's discretion. (*Carlson v. General Motors Corp.* (1972), 9 Ill. App. 3d 606, 619, 289 N.E.2d 439, 449.) A ruling will not be overturned absent an abuse of that discretion. The record here indicates that the defendant did not fully cooperate with the plaintiffs during the 14-year span of this suit. However, it also indicates that plaintiffs have not been "doggedly persistent" (as they tried to characterize their discovery efforts). On at least two occasions, an entire year went by in which the court record reflected no activity by either party. For this reason, we do not feel that the trial judge's refusal to sanction defendant constituted an abuse of his discretion.

■ Plaintiffs also seek a prejudgment interest award on the basis of interest owed on a written instrument. They argue that the contract between the teachers and the board was an "instrument of writing" within the meaning of section 2 of the Interest Act, and thus qualified them to receive prejudgment interest. (Ill. Rev. Stat. 1979, ch. 74, par. 2.) This provision was discussed recently in the case *Cushman & Wakefield Illinois, Inc. v. Northbrook 500 Limited Partnership* (1983), 112 Ill. App. 3d 951, 445 N.E.2d 1313. There the

court said that "[a]bsent an express agreement between the parties, allowance of prejudgment interest is permitted by statute (Ill. Rev. Stat. 1979, ch. 74, par. 2) if the amount is a fixed amount or easily computed." (*Cushman & Wakefield Illinois, Inc. v. Northbrook 500 Limited Partnership* (1983), 112 Ill. App. 3d 951, 963.) Thus, even if we adopted the argument that the contract as it existed in this case was the type of "instrument" contemplated by drafters of section 2 of the Interest Act, plaintiffs still have not met the second part of the requirement set out in *Cushman, i.e.,* that the amount be fixed or easily computed. In this case, it was neither. There were over 90 plaintiffs, each with a different amount recovered and each with a claim for a different number of school years. The maze of computations which the court had to follow in order to come to the total amount recoverable by each plaintiff was quite circuitous. The trial judge evidently felt that an additional interest computation for each plaintiff could not be done easily. We agree. We see no abuse of discretion in this decision.

■ The fifth issue raised by plaintiffs in their cross-appeal is whether the trial court erred in dismissing the plaintiffs who did not appear at a "show-up" conference held on June 15, 1981.

The trial court had authority to enter such an order pursuant to Supreme Court Rule 218 and Supreme Court Rule 219. (87 Ill. 2d Rules 218, 219.) According to Rule 218(a)(5), the trial judge may conduct pretrial conferences to consider any matter "which may aid in the disposition of the action." (87 Ill. 2d R. 218(a)(5).) The provision further states that authorized counsel must appear "with or without parties as the court directs." 87 Ill. 2d R. 218(a).

The record shows that on October 6, 1980, the trial judge informed attorneys for both parties that a pretrial conference would be held in June of 1981. The purpose of this conference was to ascertain the exact number of plaintiffs who still wished to proceed with the prosecution of their claims. Over the years, many teachers had moved out of the district or out of the State, and some had died. For an orderly administration of this cause, it was incumbent upon the court to determine who the plaintiffs were actually going to be. The judge allowed the plaintiffs eight months to make arrangements to appear at the conference or, in the alternative, to contact the court and explain the reason they were unable to attend. On June 15, 1981, the hearing was held as scheduled and the trial judge entered an order dismissing the unaccounted-for plaintiffs. The judge's order dismissing those who did not contact the court was authorized by Rule 218(d) (87 Ill. 2d R. 218(d)), which refers to remedies provided in Rule 219. Paragraph (c)

of Rule 219 says that if a party unreasonably refuses to comply with any order entered pursuant to Rules 201 through 218, the court may enter "such orders as are just, including, among others, the following: *** (iii) that [the offending party] be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense relating to that issue." 87 Ill. 2d R. 219(c).

In our view, eight months is a sufficient amount of time to allow parties to either arrange to appear or to arrange an explanation for their absence. It would be unreasonable for teachers who intended to proceed as plaintiffs in this cause to have failed to do one or the other of these. Thus, the trial court did not err in ordering their dismissal.

■ The final issue on cross-appeal is whether it was error for the court to dismiss certain claims on the basis of *laches*. Plaintiffs first argue that *laches*, as an affirmative defense, should have been raised in the pleadings and that since it was not, the defendant has forever waived it. This is not entirely accurate. Although *laches* is an affirmative defense, it may be raised in pretrial motions such as motions for summary judgment or motions to dismiss if the facts on which it is based are evident on the face of the complaint or in the affidavits submitted with the motions. *Beckham v. Tate* (1978), 61 Ill. App. 3d 765, 768, 378 N.E.2d 588, 590.

■ Plaintiffs also argue that because *laches* is an equitable doctrine, it should not have been applied to a breach of contract action. We need not resolve this question, however, because we find that no bases for *laches* existed in this suit and thus the doctrine even if applicable was improperly invoked.

As the supreme court noted in *DeBruyn v. Elrod* (1981), 84 Ill. 2d 128, 418 N.E.2d 413, *laches* is not simply a matter of delay or passage of time. A person seeking to invoke this equitable defense must show that he was prejudiced and misled by the delay or that it " '*** caused him to pursue a course different from what he would otherwise have taken.' " (*DeBruyn v. Elrod* (1981), 84 Ill. 2d 128, 136, 418 N.E.2d 413, 417.) The rationale behind this is that as soon as possible, a defendant should be informed that his conduct is injurious so that he can alter his behavior or rectify the error to plaintiffs satisfaction. However, judging from the posture the school board has taken throughout this litigation, it is unlikely that such a transformation would have taken place. In short, we find nothing in the record before us to indicate that the board's conduct during the years 1963-67 would have been any different than it was throughout 1959-63. Nor was there any evidence that the board was prejudiced by the plaintiffs' 1969 filing.

Thus, although we realize that the trial court has been diligent in its efforts to bring this case to fruition, we are compelled to remand it on this last issue. We hold that the defense of *laches* was unavailable to defendant. Consequently, those claims which were dismissed at the August 29, 1979, hearing on the grounds of *laches* are hereby reinstated, and the cause remanded for further proceedings. The trial court is affirmed on all other points.

Affirmed in part, reversed in part and remanded.

WELCH and JONES, JJ., concur.