EARLEE FORD, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (4th Division)   No. 83—1435

Opinion filed March 21, 1985.—Rehearing denied April 29, 1985.

Kroll & Rubin, Ltd., and William J. Harte, Ltd., both of Chicago (William J. Harte and Debra O. Elder, of counsel), for appellant.

James D. Montgomery, Corporation Counsel, of Chicago (Jerome A. Siegan and Maureen Kelly Ivory, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE ROMITI delivered the opinion of the court:

Plaintiff Earlee Ford (Ford) was injured when the motorcycle he was driving struck a pothole in West Cermak Road in Chicago at about 2 p.m. on April 17, 1980. Ford filed suit against the city of Chicago alleging that improper road maintenance had caused the pothole.

Following a jury trial, judgment was entered on the verdict assessing Ford's damages at $930,000 but finding him 95% comparatively negligent (for an award to Ford of $46,500), and Ford has appealed. He raises the following questions for our review:

1. Whether the jury's verdict that Ford was 95% comparatively negligent was against the manifest weight of the evidence;

2. Whether admission into evidence of Ford's motorcycle was so prejudicial as to outweigh any probative value, thus constituting reversible error;

3. Whether an ambulance report offered by Ford should have been admitted into evidence as an exception to the hearsay rule or as impeachment of a witness;

4. Whether a public utility's inspection report was properly admitted into evidence as a business record;

5. Whether the trial court erred in refusing to impose sanctions upon the city pursuant to Illinois Supreme Court Rule 219(c) (87 Ill. 2d R. 219(c)), on the ground that it failed to comply with certain of Ford's discovery requests;

6. Whether certain questions posed at trial by counsel for the city were improper, irrelevant, and immaterial and consequently so prejudicial to require a new trial;

7. Whether the trial court committed reversible error in excluding the testimony of Ford's expert regarding line of vision testing.

We affirm.

The following is a summary of the pertinent pleadings and evidence produced at trial. Ford alleged in his complaint against the city that he was injured on April 17, 1980, as he was riding his Honda 750 motorcycle in the 3500 West block of Cermak Road in Chicago. According to his testimony as well as that of Carl Johnson, who was riding his own motorcycle on Cermak near Ford when the accident occurred, Ford was riding eastbound on Cermak at roughly 2 p.m. on the day of the accident. He had stopped behind an automobile in the center eastbound lane at the intersection of Central Park and Cermak because the light of the traffic control device was red. Ford was seated in the normal position with his feet on the lower foot pegs. When the light turned green, Ford proceeded behind the car in front of him. He was in the right-hand side of the left lane approximately two to three feet north of the dash marks. As the car slowed to make a left turn off Cermak, Ford also slowed. When he was roughly 40 to 60 feet behind the car, he turned on his right turn signal, checked the right mirror, looked over his right shoulder, double-checked the right mirror, and then began to change lanes. He was traveling roughly 20

to 25 miles per hour and leaning slightly to the right as he executed the lane change. He was thrown from the motorcycle when he hit a pothole in the right-hand lane of Cermak. Ford testified that only a few seconds elapsed from the time he began to change lanes until he struck the pothole. He stated he had been looking ahead slightly to the right and did not see the pothole because the car obstructed his vision.

Based upon the testimony of individuals who lived on Cermak or traveled the road, an employee of Peoples' Gas, Light & Coke Co, a safety and claims manager for the State of Illinois Department of Transportation, and Ford and Johnson, it was established that the area of the pothole had been previously repaved but had settled such that the riding surface in the wheel lane had been pounded down a considerable amount below the surrounding concrete. The pothole was roughly 4 to 5 feet wide and 8 to 9 feet long and was surrounded by and covered with gravel. A Chicago police department officer who investigated the accident shortly after it occurred also testified regarding the scene, but stated that he noticed no pothole or other depression in the road surface.

Both Ford and the city presented expert testimony regarding whether the road conditions were reasonably safe or whether they would cause a reasonable motorcycle rider to lose control under similar conditions. Marjorie Jennings, motorcycle safety coordinator of the Cook County motorcycle safety program, testified on behalf of Ford. Ronald Eltzeroth, a communications dispatcher and motorcycle instructor of police for the city of Champaign and motorcycle safety rider's course instructor at the University of Illinois, testified on behalf of the city. Jennings testified in essence that a similar motorcycle in similar conditions could go out of control because the motorcycle's instability during a lane change would render the pothole extremely hazardous, and that a rider under similar conditions would have difficulty seeing the pothole because his view would be obstructed by the car in front of him. Eltzeroth testified essentially that the average rider under similar circumstances would not have attempted the lane change at 20 to 25 miles an hour with a following distance of 40 to 60 feet. He stated that a safe maneuver would have been to change lanes at 20 to 25 miles per hour with a following distance of 116 to 146 feet.

Based upon the evidence presented at trial, the jury assessed Ford's damages at $930,000 but found him 95% comparatively negligent and reduced his award to $46,500. The trial court entered its judgment on this verdict and subsequently denied Ford's post-trial

motion for a new trial. Ford's timely appeal followed.

## I

Ford argues that the jury's verdict was contrary to the manifest weight of the evidence and therefore should be reversed and the cause remanded for a new trial.

■ A court of review is empowered to reverse a jury verdict only if it was against the manifest weight of the evidence. (*Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 439, 359 N.E.2d 1078.) The manifest weight of the evidence standard also applies where the jury's verdict assessed the degree of the plaintiff's comparative negligence. (*Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 1060-62, 466 N.E.2d 1064.) A verdict is said to be against the manifest weight of the evidence where it is palpably erroneous and wholly unwarranted (*Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 415, 458 N.E.2d 530), is clearly the result of passion or prejudice (*Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25, 42, 458 N.E.2d 1331), or appears to be arbitrary, unreasonable, and not based upon the evidence (*Gabrenas v. R.D. Werner Co.* (1983), 116 Ill. App. 3d 276, 285, 451 N.E.2d 1307). When considering whether a verdict was contrary to the manifest weight of the evidence, a reviewing court must view the evidence in the light most favorable to the appellee (here, the city of Chicago). *Kemper v. Mc-Dougal-Hartmann Co.* (1984), 127 Ill. App. 3d 512, 515, 468 N.E.2d 998.

■ Ford argues here that the jury's verdict which found him 95% comparatively negligent was not supported by the evidence presented below. Specifically, he analyzes in detail the conflicting testimony of the two expert witnesses at trial, Jennings and Eltzeroth. He urges that Jennings' testimony clearly showed that a reasonably prudent motorcycle rider would have acted as he did shortly prior to the accident, would have followed an automobile at the rate of speed and distance he used, and would have been unable to see the pothole in sufficient time to maneuver safely in order to avoid it or ride over it without injury. Ford claims that the testimony of Eltzeroth, in comparison, was equivocal and contradictory regarding proper speed and following distance.

Although there was conflict in the testimony of the two experts, nevertheless we cannot say that on these grounds the jury's verdict was against the manifest weight of the evidence. A verdict "cannot be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony or because the re-

viewing court would have reached a different conclusion if it had been the trier of fact." (*Turner v. Chicago Transit Authority* (1984), 122 Ill. App. 3d 419, 425, 461 N.E.2d 551.) Nor should we lightly overturn the trial court's denial of Ford's post-trial motion for a new trial, as the trial court had a similar opportunity to view the trial proceedings and all of the evidence and argument presented to the jury. (See *Berner v. Kielnik* (1983), 117 Ill. App. 3d 419, 424, 453 N.E.2d 729.) Based upon our review of the record, we conclude that the evidence produced at trial was sufficient to support the jury's verdict assessing Ford's degree of negligence in the accident.

## II

■ Ford contends that the trial court's admission of his motorcycle into evidence for the jury's viewing was reversible error because its prejudicial effect clearly outweighed its probative value.

"Tangible objects of almost every kind involved in an incident have been ruled properly admitted as tending to establish a fact of consequence." (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 401.4, at 117 (4th ed. 1984).) Courts have long favored the admission and use of such evidence in order to clarify an expert witness' testimony or assist him in its presentation (*Hubbard v. McDonough Power Equipment, Inc.* (1980), 83 Ill. App. 3d 272, 282, 404 N.E.2d 311), as well as to aid the jury to better understand the issues in a case (*Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25, 38, 458 N.E.2d 1331). The overriding considerations in admitting such evidence are relevance and fairness. (*Lake County Forest Preserve District v. Vernon Hills Development Corp.* (1980), 85 Ill. App. 3d 241, 246, 406 N.E.2d 611, *aff'd* (1982), 92 Ill. 2d 72, 440 N.E.2d 848.) The admission of such evidence is within the sound discretion of the trial court and will not be disturbed on review absent a clear abuse thereof. *Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25, 38, 458 N.E.2d 1331; *Simmons v. City of Chicago* (1983), 118 Ill. App. 3d 676, 684, 455 N.E.2d 232.

Based on our review of the record, we cannot say that the trial court's admission of the motorcycle into evidence constituted a clear abuse of discretion, since we find no unfairness or prejudice to Ford in its admission. The record shows that the motorcycle was used by the city's expert during the course of his testimony to discuss size, weight and maneuverability of the motorcycle, and height and line of vision of a rider. All of these matters were important to the jury's understanding of the expert's testimony as well as the cause and nature of the accident and Ford's resulting injuries.

Ford argues that admission of the motorcycle into evidence for the jury's viewing in the courtroom was prejudicial because the motorcycle was large while the courtroom was small. Consequently, Ford contends, the jury was overwhelmed by the size of the motorcycle during the course of the testimony of the city's expert. We find no *per se* error in admission of the cycle merely because it was large while the courtroom itself was, in Ford's view, too small. The record shows that the trial court refused to take the jury outdoors to view the motorcycle because the weather was wintery. Under these circumstances, we cannot say that the trial court's decision constituted an abuse of discretion.

### III and IV

■ Ford urges that the trial court's refusal to admit an ambulance report into evidence in order to establish the existence of the pothole on the day of the accident was reversible error. He also argues that the trial court's admission of a public utility inspection report in order to establish the nonexistence of the pothole was reversible error.

The ambulance report which Ford sought to introduce below was that made by the paramedics of the Chicago fire department who arrived at the scene of the accident in order to provide medical assistance to Ford. The comment portion of the report stated:

"Victim was riding motorcycle. Struck pothole. Lost control. His body landed on the curb of the street."

Ford argued before the trial court that the document was admissible as a business record, as a public record, as an admission against interest of an agent of the city, and as impeachment of the testimony of the Chicago police department officer to the effect that he noticed no pothole when he investigated the scene of the accident.

Error in the exclusion or admission of evidence does not require reversal where there has been no prejudice or where the evidence has not materially affected the result. (*Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 727, 457 N.E.2d 85; *Oak Lawn Trust & Savings Bank v. City of Palos Heights* (1983), 115 Ill. App. 3d 887, 897, 450 N.E.2d 788.) Consequently, assuming *arguendo* that the report offered by Ford was admissible on any one of the grounds he asserted, we conclude that any error was harmless. The jury's verdict which assessed Ford's damages at $930,000 clearly established that the jury determined there was indeed a pothole in Cermak Road on the day of Ford's accident. Since the purpose of the ambulance report was to establish the existence of the pothole, the failure to permit its

admission had no effect on the jury's determinations.

We reach a similar conclusion with regard to the trial court's admission of the inspection report of Peoples' Gas Light & Coke Co., which stated that the road surface was "okay." Any error in admission was harmless to Ford, as the jury obviously concluded that there was a pothole in Cermak Road on the day of Ford's accident.

V

■ Ford argues that the trial court's refusal to impose sanctions upon the city for its alleged failure to comply with discovery requests constituted reversible error. Specifically, he maintains that the city failed to disclose to him the name of its expert witness as required by the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1003(c)), failed to provide to him a copy of the ambulance report he requested pursuant to the Illinois Supreme Court Rules (87 Ill. 2d R. 201), and failed to furnish him with a copy of the public utility's inspection report which he requested pursuant to discovery rules (87 Ill. 2d R. 201). Ford contends that the trial court's refusal to impose sanctions upon the city under Supreme Court Rule 219(c) (87 Ill. 2d R. 219(c)) constituted reversible error.

Sanctions for noncompliance with a party's discovery requests are appropriate when such noncompliance has been "unreasonabl[e]." (87 Ill. 2d R. 219(c); *Krasnow v. Bender* (1979), 78 Ill. 2d 42, 47, 397 N.E.2d 1381.) Unreasonableness will be found where the offending party's conduct can be characterized as a deliberate and pronounced disregard for the rules and the court. (*Permiter Exhibits, Ltd. v. Glenbard Molded Binder, Inc.* (1984), 122 Ill. App. 3d 504, 512, 461 N.E.2d 44.) The criteria to be considered in determining the necessity or propriety of sanctions include surprise to opposing counsel, prejudicial effect, diligence of opposing counsel, timely objection and good faith. (*Roedner v. Central Illinois Public Service Co.* (1983), 117 Ill. App. 3d 81, 87, 452 N.E.2d 842; *Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 1018, 388 N.E.2d 770.) Imposition of such sanctions rests within the sound discretion of the trial court, whose decision will not be disturbed on review absent a clear abuse thereof. *Miller v. Board of Education* (1983), 119 Ill. App. 3d 88, 94, 456 N.E.2d 143.

The record shows that several weeks passed before the city provided the requested information to Ford. This lapse of time, although an indication of a certain tardiness on the part of the city, was nevertheless insufficient to demonstrate that the city's conduct was intentional, deliberate, or calculated to harm Ford. Further, any lack of utmost diligence attributable to the city caused no prejudice to Ford in

his preparation for litigation. Both the inspection report and the ambulance report were furnished to Ford in ample time prior to trial. Similarly, the identity of the city's expert witness was made known to Ford in sufficient time for him to depose the expert before trial began. Accordingly, we cannot say that the trial court's refusal to impose sanctions against the city was an abuse of discretion.

## VI

■ Ford suggests that certain questions posed at trial by counsel for the city were improper, irrelevant, and immaterial and consequently so prejudicial to require a new trial.

A reviewing court will not find error to be reversible unless it is demonstrated that the error was substantially prejudicial and affected the outcome of the trial. (*Holsapple v. Country Mutual Insurance Co.* (1983), 112 Ill. App. 3d 512, 518, 445 N.E.2d 909.) The role of the reviewing court is not to ensure that the record is totally free from error. *Stromquist v. Burlington Northern, Inc.* (1983), 112 Ill. App. 3d 37, 45, 444 N.E.2d 1113; *Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 1019, 388 N.E.2d 770.

Our review of the record discloses no substantial prejudice to Ford resulting from the questions posed. In each instance, counsel for Ford made timely objections which the trial court sustained. Cautionary instructions to the jury were also given where requested by Ford's counsel. Finally, the questions were inconsequential and could have had no significant influence upon the jury's verdict. Accordingly, we find no reversible error.

## VII

■ Ford argues that the trial court's refusal to admit testimony of his expert regarding a line of vision testing experiment she had performed was reversible error.

The admissibility of an experiment depends upon whether the conditions of the experiment are substantially similar to the actual circumstances of the particular case, although the conditions need not be identical. (*Kent v. Knox Motor Service, Inc.* (1981), 95 Ill. App. 3d 223, 226, 419 N.E.2d 1253.) Experiments are incompetent as evidence where they do not duplicate the essential conditions existing at the time of the accident which gave rise to the litigation. (*Galindo v. Riddell, Inc.* (1982), 107 Ill. App. 3d 139, 144, 437 N.E.2d 376; *Hubbard v. McDonough Power Equipment, Inc.* (1980), 83 Ill. App. 3d 272, 280, 404 N.E.2d 311.) The trial court's determination of admissibility is within its sound discretion and will not be reversed on appeal absent

clear abuse. *Terrell v. Lovelace* (1978), 65 Ill. App. 3d 332, 336, 382 N.E.2d 135.

The trial court here determined that the experiment evidence offered by Ford did not substantially duplicate the essential conditions surrounding Ford's accident, and we cannot conclude that this decision was clearly erroneous. Ford's expert tested line of vision by driving an automobile, not a motorcycle, under similar circumstances to those Ford had encountered. The fact that Ford was riding a motorcycle rather than driving a car when the accident occurred was without question one of the essential elements leading to the accident, and we cannot say that the trial court's decision to exclude testimony regarding the experiment on this ground was clearly an abuse of discretion.

For the reasons stated above, the judgments of the trial court are affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.