# Illinois Official Reports

## Appellate Court

> ### *Cipolla v. Village of Oak Lawn*, 2015 IL App (1st) 132228

| | |
|---|---|
| Appellate Court Caption | DIANE CIPOLLA, Plaintiff-Appellant, v. THE VILLAGE OF OAK LAWN, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-13-2228 |
| Filed | January 14, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that plaintiff, who had worked for defendant village for 12 years and was nearly 60 years old, was terminated from her position as a result of age discrimination, the jury's verdict for the village was upheld on appeal, over plaintiff's arguments that the trial court erred in failing to clarify the meaning of "fired," that defense counsel made improper remarks during closing argument, that a "cat's paw" instruction should have been given, that the village should not have been allowed to present witnesses who denied that comments were made about plaintiff's age during a closed meeting of the village board, that the village was improperly allowed to present evidence about the million dollar business plaintiff's husband ran and that the verdict was against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-1673; the Hon. Thomas R. Mulroy, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Dana L. Kurtz and Heidi Karr Sleper, both of Kurtz Law Offices, Ltd., of Hinsdale, for appellant. |
| | |
| | Jennifer Turiello, of Peterson, Johnson & Murray-Chicago, LLC, of Chicago, for appellee. |
| | |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    The village manager of Oak Lawn told Diane Cipolla, a 12-year employee just shy of her sixtieth birthday, that her position was being terminated to help close a budget gap that exceeded $1 million. But Cipolla believes the real reason was her age and claims her supervisor was heard commenting on her age during a closed meeting of the village board of trustees only one day before the termination. Cipolla sued the village alleging age discrimination in violation of the Illinois Human Rights Act (775 ILCS 5/1-102(A) (West 2012)). After a four-day trial, the judge instructed the jurors and gave them two special interrogatories asking: (1) whether the nondiscriminatory reason the village gave for terminating Cipolla's employment (*i.e.*, budget) was a pretext, and (2) whether the village fired Cipolla because of her age. During deliberations, the jury submitted a note to the judge asking whether the term "fired" includes laid off, terminated, or eliminated. After conferring with counsel, the judge decided not to answer the question and instead instructed the jurors to "resolve your question by continuing to review said facts and by reference to the jury instructions." The jury returned a verdict in favor of the village. After the trial court denied her motion for a new trial, Cipolla appealed.

¶ 2    Cipolla argues the jury's verdict should be reversed and the case remanded for a new trial because: (1) the trial court abused its discretion by refusing to clarify for the jury the meaning of the word "fired"; (2) defense counsel made improper, prejudicial remarks during closing argument; (3) the jury should have been given a "cat's paw liability" instruction; (4) the village should not have been permitted to present witnesses who denied the comment about Cipolla's age had been made during the closed board meeting while also maintaining executive privilege over an audiotape of the meeting; (5) the trial court erred in permitting the village to present irrelevant evidence about her husband's business; and (6) the jury's verdict was against the manifest weight of the evidence.

¶ 3    We affirm. The jury's request for clarification on the meaning of the word "fired" presented a factual issue, and the trial court did not err in refusing to answer it. Further, the court's evidentiary rulings and jury instructions were not grounds for a new trial, defense counsel's comments during closing arguments were not prejudicial, and the jury's verdict

was not against the manifest weight of the evidence.

¶ 4                                    BACKGROUND

¶ 5    Diane Cipolla began working as the business regulation officer in the Village of Oak Lawn's finance department in 1996. On April 11, 2008, Cipolla met with village manager Larry Deetjen, Brian Hanigan, the village's director of finance and Cipolla's supervisor, and Dan Omiecinski, the village's human resource director. Deetjen told Cipolla that her job was being eliminated or automated due to budget constraints. Cipolla was placed on administrative leave and continued to receive full pay and benefits until April 23, 2008, when her employment was officially terminated. On April 22, 2008, the village board of trustees approved amendments to the village's 2008 budget, which included the elimination of Cipolla's position, as well as three firefighter positions.

¶ 6    Cipolla contends that on April 10, 2008, the day before she was terminated, the village board met in a closed executive session and, while discussing reorganization and staff cuts, her supervisor, Brian Hanigan, commented that Cipolla was "older." Cipolla also asserts that although she was told her position was being eliminated or automated, her job responsibilities were transferred to Deanne Adasiak, another village employee who was 20 years her junior. Cipolla contends that budget constraints were only a pretext for her termination, because not long after, the village hired a budget director for a salary in excess of $80,000, gave many of its finance department employees raises, and continued to hire new employees.

¶ 7    Cipolla filed a charge of age discrimination with the Illinois Department of Human Rights, which dismissed the charge on November 10, 2010. Cipolla then filed a complaint in the circuit court of Cook County on February 14, 2011 (which was amended on March 20, 2012), alleging she was fired because of her age in violation of the Illinois Human Rights Act (Act) (775 ILCS 5/1-102 et seq. (West 2012)). Section 1-102(A) of the Act provides, in relevant part, that "It is the public policy of this State *** [t]o secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her *** age ***." 775 ILCS 5/1-102(A) (West 2012). The village filed an answer denying all of Cipolla's allegations and an affirmative defense asserting that Cipolla could not establish a prima facie case of age discrimination because no other similarly situated younger employees were treated differently and the village never sought a replacement for her position. The village contended Cipolla was terminated for budgetary reasons, because it had a deficit of more than $1 million that it decided to alleviate by cutting personnel costs.

¶ 8    During pretrial discovery, Cipolla asked the village to produce the audiotape from the executive session of the village board, but the village refused, arguing it was privileged under the Illinois Open Meetings Act (5 ILCS 120/1 et seq. (West 2012)). Cipolla then filed a motion to compel the village to produce the audiotape or, alternatively, to bar the village from denying that Hanigan made statements about Cipolla's age during that meeting. In support of her motion, Cipolla contended that because budgetary decisions were purportedly made during the executive session, it was not a properly closed meeting and thus the exception to disclosure under the Open Meetings Act was inapplicable. Cipolla also argued she had a particularized need for the audiotape because board members who were at the meeting presented conflicting deposition testimony as to whether Hanigan commented about her age and discovery of the truth weighed in favor of compelling the village to produce the

audiotape. Cipolla alternatively asked the trial court to inspect the audiotape *in camera* to determine whether anything related to her age was said during the executive session.

¶ 9      After argument, the trial court ordered the village to submit the audiotape and a verified transcript for *in camera* review. After reviewing the tape and the transcript, the trial court denied Cipolla's motion. The trial judge said that the transcript indicated that a male speaker mentioned Cipolla's name twice during the executive session and that after listening to the tape, which was difficult to understand, he was able to determine that nothing was said regarding Cipolla's termination, her age, or anything else relevant to the case. The court also denied Cipolla's later motion to have the audiotape inspected by a forensics recording expert to determine if it had been edited, altered, or otherwise not properly preserved, because the court found no evidence that the recording's integrity had been compromised.

¶ 10      Before trial, Cipolla filed a motion *in limine* to bar the village from presenting testimony denying that Hanigan made statements about her age during the executive session or, in the alternative, to bar testimony relating to the tape. The trial court's ruling on that motion is not in the record, but it appears from the trial transcript that the motion was denied, at least in part, because the village presented several witnesses at trial who testified that Hanigan did not make any comments about Cipolla's age during the executive session.

¶ 11      The evidence at trial showed that on April 10, 2008, the day before Cipolla was terminated, the village's board of trustees met in executive session to discuss budget amendments. The village had a budget deficit of about $1.4 million and the board was discussing, among other things, the elimination of some vacant positions and the dismissal of some village employees. Village board member Jerry Hurckes testified that while discussing Cipolla's termination, finance director Hanigan said, "Well, she [Cipolla] is older." Hurckes said he admonished Hanigan saying, "those kinds of words can't be used because that's what gets us in trouble." Hurckes said trustee Alex Olejniczak also similarly admonished Hanigan. Olejniczak, however, testified he never heard Jerry Hurckes scold Brian Hanigan for making comments about Cipolla's age and said that if Hanigan had made that type of comment he would have objected but denied having done so. Several other witnesses at the executive session, including village trustees Thomas Phelan and Carol Quinlan and village mayor David Heilmann, also testified that they did not hear Hanigan make any comments about Cipolla's age.

¶ 12      Village manager Deetjen testified that Hanigan recommended eliminating Cipolla's position and giving her job responsibilities to Deanne Adasiak, a village employee who worked on special events. Deetjen said that the decision to terminate Cipolla was not performance based but was an effort to address the village's budget problems. Deetjen testified that in addition to Cipolla's position, the budget amendment eliminated several vacant positions and resulted in the layoff of three firefighters. Hanigan acknowledged that during the executive session meeting he recommended that the village's finance department be restructured by consolidating Cipolla's and Adasiak's positions to help close the village's budget gap but denied making any statements about Cipolla's age during that meeting.

¶ 13      On April 22, 2008, the village board held a public meeting and approved the budget amendments, which included the elimination of Cipolla's position and three firefighter positions. Trustee Hurckes voted against the amendments. Trustees Olejniczak, Phelan and Quinlan voted for the budget amendment, but testified their votes were not motivated by Cipolla's age. Later, Cipolla saw Hurckes at a political fundraiser, and he told her about

Hanigan's comments regarding her age. At about the same time, Cipolla saw a job posting on the village website for a budget director with a salary that exceeded the salary she had been earning in the business regulation officer position. Deetjen confirmed that a few months after Cipolla left the village hired a budget director, whose salary exceeded Cipolla's. Cipolla acknowledged she was not qualified for that job because she did not have an accounting degree.

¶ 14 Cipolla also acknowledged that on the day she was terminated, Deetjen told her about a potential opening in the village's 911 telecommunications center, but said no formal job offer was made, and she believed she would need to pass a civil service test before she could be offered that position. On cross-examination, Cipolla conceded that she was not interested in the telecommunications position because she had small children and did not want to work evening and weekend hours and also did not think she could handle the pressure of the job. Cipolla said the village offered no other alternatives to termination, such as taking a lower salary or assuming the job duties of another village employee with less tenure.

¶ 15 After Cipolla was terminated, she submitted paperwork with the Illinois Municipal Retirement Fund (IMRF) and has been receiving pension payments since April 2008. Cipolla testified that she filed the IMRF papers so that she and her husband could continue to get health insurance through the village's insurance plan rather than buying health insurance from a private insurer. She said that the village continues to pay part of her health insurance premium, but at a lower rate than when she was a village employee.

¶ 16 After she was terminated, Cipolla searched for other job opportunities, without success. In June 2008, she took a part-time, unpaid position at her husband's snack food business. In 2010, she began receiving salary for her work at the company, and at the time of trial, was earning $12,000 a year. Cipolla testified that her duties involve sales and marketing, attending trade shows, and sending samples and product pricing information to distributors. She said she has business cards with the title of sales director, but said she uses them primarily to provide potential customers her contact information. Cipolla described the company as a small, three-employee business and her job as a "lesser position" than the one she held at the village.

¶ 17 On cross-examination, Cipolla acknowledged that her husband's business partner was Fred Plochman, one of the owners of Plochman's Mustard Company, that Fred Plochman died and her husband is now the sole owner of the business. She also acknowledged that the company's products are sold in Whole Foods stores, as well as in China and Dubai. Over objection, defense counsel asked Cipolla about a report showing the company had annual revenues exceeding $2 million. Cipolla denied knowledge about the company's finances but disputed that figure.

¶ 18 Plaintiff's husband, Paul Cipolla, testified that his company is a small snack food business with three employees. He said he hired his wife as a part-time sales director because she was unable to find other employment and he thought it would help alleviate the depression she felt after losing her job with the village. On cross-examination and over objection from plaintiff's attorney, Paul Cipolla testified that his company's 2012 annual revenues were between $500,000 and $1 million. On redirect, he said that the $500,000 to $1 million figure was not income to him because it did not include deductions for expenses paid to distributors and contractors.

¶ 19        During the jury instruction conference, Cipolla tendered a non-Illinois Pattern Jury Instruction (plaintiff's instruction No. 10), which read as follows:

"The Illinois Human Rights Act prohibits 'unlawful discrimination.' Unlawful discrimination is discrimination against a person on the basis of his or her race, color, religion, national origin, ancestry, age, sex, marital status or handicap.

The Act specifically defines the following conduct as a civil rights violation in the employment context: For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination."

¶ 20        The village objected, arguing that the first paragraph alone would sufficiently and accurately state Illinois law and noting that plaintiff's instruction No. 11 (see Illinois Pattern Jury Instructions, Civil, No. 250.02 (2011)) (hereinafter, IPI Civil (2011)) already addressed the elements Cipolla was required to prove to prevail on her age discrimination claim. Plaintiff's instruction No. 11 stated:

"The Plaintiff has the burden of proving each of the following propositions:

First, that the Plaintiff was an employee of the Defendant;

Second, that the Plaintiff was fired from her employment with the Defendant;

Third, that the Plaintiff was fired because of her age;

Fourth, that the Plaintiff sustained damages as a result of her firing.

If you find from your consideration of all the evidence that each of these propositions has been proven, then your verdict should be for the Plaintiff. On the other hand, if you find from your consideration of all the evidence that any of these propositions has not been proven, then your verdict should be for the Defendant."

¶ 21        The trial court gave plaintiff's instruction No. 11 and over Cipolla's objection only gave the jury the first paragraph of plaintiff's instruction No. 10.

¶ 22        Two other proposed jury instructions on which the parties disagreed were plaintiff's instructions Nos. 17 (a modified IPI) and 18 (a non-IPI). Plaintiff's instruction No. 17 modified the IPI Civil (2011) No. 50.02 agency instruction as follows: "Brian Hanigan and Larry Deetjen were agents of the Defendant Village of Oak Lawn at the time of Plaintiff's termination. Therefore, any act or omission of the agents at that time was in law the act of omission of the Defendant Village of Oak Lawn." The village objected, arguing that agency was not a contested issue and the instruction would confuse the jury. The village also objected to Cipolla's proposed non-IPI instruction No. 18, seeking to hold the village liable for Hanigan's discriminatory intent, also referred to as "cat's paw liability." Plaintiff's instruction No. 18 read: "The Defendant Village of Oak Lawn may be held liable for employment discrimination based on the discriminatory animus of a supervisor who influenced, but did not make, the ultimate employment decision, if that supervisor performs an act motivated by discriminatory animus that is intended by the supervisor to cause the termination, and does cause the termination."

¶ 23        Cipolla's attorney contended cat's paw liability was an issue because evidence showed that Hanigan recommended to Deetjen that Cipolla be terminated. The trial court declined to give instruction No. 18, finding it would confuse the jury, but instead gave the modified agency instruction, plaintiff's instruction No. 17.

¶ 24    While the jurors were deliberating, they sent a note to the judge, stating, "Judge, Please define fire. Does it include, a) laid off; b) terminated; c) eliminated." Cipolla's counsel argued the trial judge should answer in the affirmative and suggested that the jury's confusion could have been avoided if the trial judge had given plaintiff's proposed instruction No. 10 in full. The trial judge decided the question was a factual one and answered it by telling the jurors, "You should resolve your questions by continuing to review said facts and by reference to the jury instructions." Cipolla's attorney did not object to this response.

¶ 25    The jury returned a verdict in favor of the village. In addition, the jury answered two special interrogatories in the negative, finding that the nondiscriminatory reason the village gave for terminating Cipolla's employment (*i.e.*, budget) was not a pretext and that the village did not fire Cipolla because of her age. On January 31, 2013, the trial court entered judgment against Cipolla and in favor of the village. Cipolla filed a motion for a new trial arguing, in part, that the verdict was against the manifest weight of the evidence, that the trial judge erred in refusing to answer the jury's question regarding the definition of "fired," and that several of the trial judge's rulings on evidence and jury instructions were erroneous. The trial court denied the motion for a new trial and Cipolla filed a timely notice of appeal.

¶ 26                                    ANALYSIS
¶ 27                                Jurors' Question
¶ 28    Cipolla first contends the trial court abused its discretion by not answering the jury's question whether "fired" includes laid off, terminated, or eliminated. She asserts the judge's failure to provide an answer led to jury confusion and warrants reversal and a new trial.

¶ 29    As a preliminary matter, we address defendant's assertion that Cipolla waived the issue by assenting to the trial court's decision to tell the jury to continue to deliberate. Generally, when a party consents to a trial court's answer to a jury question, that party cannot later argue that the trial court's answer was an abuse of discretion. *People v. Averett*, 237 Ill. 2d 1, 24 (2010). The record shows that after receiving the jury's question, the trial judge asked the attorneys for input on a response. When defense counsel suggested the judge tell the jury that "fired" does not include eliminated, plaintiff's attorney objected and asked to "make a record" that the trial court should have given the jury plaintiff's instruction No. 10. Although the judge ultimately rejected plaintiff's request, stating that he could not give the jury additional instructions, and told the jury to continue to review the facts, plaintiff's counsel did present an objection, which she again raised in her motion for a new trial. Thus, plaintiff preserved the issue.

¶ 30    Generally, the trial court has "a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion." *People v. Childs*, 159 Ill. 2d 217, 228-29 (1994). The duty to answer the jury's question applies even if the jury was properly instructed. *Id.* at 229; see also *People v. Reid*, 136 Ill. 2d 27, 39 (1990). Therefore, "[t]he failure to answer or the giving of a response which provides no answer to the particular question of law posed has been held to be prejudicial error." *Childs*, 159 Ill. 2d at 229. But the trial court has the discretion to "decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry

- 7 -

involves a question of fact, or if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another." *Id.* at 228. A trial court's decision on how to respond to jury questions during deliberations is "ordinarily left to the discretion of the trial court, so that the trial court's decision will be disturbed on appeal only if that decision constituted an abuse of discretion. [Citation.]" (Internal quotation marks omitted.) *People v. Nash*, 2012 IL (1st) 093233, ¶ 39.

¶ 31    Cipolla relies on *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165 (1997), to support her argument that the trial judge's decision not to answer the jury's question was an abuse of discretion. In *Van Winkle*, the plaintiff alleged that the defendant conspired with others to suppress the health hazards of asbestos exposure. *Van Winkle*, 291 Ill. App. 3d at 167. During deliberations, the jury asked a question about the underlying charge of a civil conspiracy, namely, expressing " 'confus[ion] about the meaning of "one or more parties" in a conspiracy' " and whether it could mean defendant alone or had to be defendant and another company. *Id.* at 171. After conferring with counsel for both parties, the trial court referred the jury to the written jury instructions. *Id.* at 172. The appellate court found this response to be an abuse of discretion warranting reversal. The appellate court first noted that the jury asked a specific question that manifested its confusion on a substantive legal issue–who could enter into a conspiracy–which was critical to deciding the merits of the defense. The court further noted that although the jury instructions may have been proper, that "is not the determinative inquiry. The issue is whether the instructions were clearly understandable to the jury." (Internal quotation marks omitted.) *Id.* at 173. Concluding that the trial court's failure to answer the question substantially prejudiced the defendant, the court stated: "[I]n the midst of jury deliberations after a vigorously contested trial, a question from the jury deserves as much–if not more–thoughtful consideration as did the original instructions." *Id.* at 174.

¶ 32    The *Van Winkle* court relied heavily on the reasoning of *Childs*. In *Childs*, the jury requested clarification of jury instructions on an "intricate" and "difficult" point of law–whether a guilty verdict on armed robbery mandated a guilty verdict of murder or still allowed for the jury to find defendant guilty of voluntary or involuntary manslaughter. In response, the trial court briefly attempted to answer the question through an *ex parte* communication, but this response did not clarify the legal issues raised in the jury's question. While the trial court admitted that it did not understand the question, it made no effort to clarify the jury's question. The supreme court found that the question reflected juror confusion over a substantive legal issue and the trial court had a duty to answer it. Therefore, the trial court's failure to address the problem that triggered the question substantially prejudiced the defendant. *Childs*, 159 Ill. 2d at 234. The supreme court in reversing the judgment concluded, "It is not apparent to us that the manner in which the court dealt with the jury's inquiry was not a factor in the rendering of that verdict." *Id.* at 234-35.

¶ 33    Cipolla contends that as in *Van Winkle* and *Childs*, the jury's question expressed confusion about a specific substantive legal issue and the trial judge's refusal to answer it left the jury confused as to a fundamental element of employment discrimination, requiring reversal and a new trial. We disagree. The jury's question, whether "fired" included laid off, terminated, or elimination of Cipolla's position, was a question of fact for the jury to decide. The jury heard several witnesses, including village manager Deetjen, testify about the distinction between an employee being fired and a position elimination, suggesting that

Cipolla was not fired because the decision was not "performance based." Village trustee Olejniczak also testified about a factual distinction between firing, terminating, and eliminating an employee's position, in that firing is performance based while a position elimination involves budgetary factors. The jury question in this case, unlike the jury questions in *Van Winkle* and *Childs*, involves a question of fact, not a question of law. Thus, the trial court did not abuse its discretion in not answering the jury's question.

¶ 34 We also disagree with Cipolla's contention that the jury's question would have been avoided if the trial court had given her proposed jury instruction No. 10, rather than only the first paragraph. The remainder of that proposed jury instruction does not mention layoffs or elimination of positions or define what those terms mean in relation to the word "fired." The decision to provide a particular jury instruction lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion. *Webber v. Wight & Co.*, 368 Ill. App. 3d 1007, 1020-21 (2006). Cipolla has failed to show that if the trial judge had given her proposed instruction, the jury would have not submitted the question or that the trial court abused its discretion in refusing to do so.

¶ 35 Finally, we note that Cipolla's claim of error is based on the trial court's decision to refrain from answering a question related to an instruction she tendered. If the jury was confused about the meaning of the word "fired," it was because Cipolla used that word in a jury instruction she tendered (plaintiff's instruction No. 10). By tendering the instruction, Cipolla took the position that it was an accurate statement of the law, and she cannot now argue error related to the trial court's decision not to clarify that instruction. Further IPI Civil (2011) No. 250.02, on which plaintiff's instruction No. 10 was based, gives a party the option of using "discharged" instead of "fired," which would have been a more accurate description of the village's action–it discharged her due to the elimination of her position for budgetary reasons. Because Cipolla did not use the more accurate term when requesting the jury instruction, she cannot now complain.

¶ 36 Defense Counsel's Closing Argument

¶ 37 Cipolla next contends the trial court abused its discretion in denying her request for a new trial based on defense counsel's comments during closing arguments. The village's attorney asserted that Cipolla "[was not] fired, at all" because "[t]he Village of Oak Lawn is still subsidizing her health insurance. They don't do that for fir[ed] employees." Cipolla contends the statement was false because her contributions to IMRF while she was a village employee entitled her to health insurance regardless of how her employment was terminated. Cipolla asserts that defense counsel attempted to confuse the jury by implying that Cipolla's receipt of health insurance through IMRF necessarily means she was not fired.

¶ 38 The purpose of closing argument is to draw reasonable inferences from the evidence and assist the jury in fairly arriving at a verdict based on the law and evidence. *Copeland v. Stebco Products Corp.*, 316 Ill. App. 3d 932, 948 (2000). As a result, counsel is afforded wide latitude during closing argument and may comment and argue on the evidence and any reasonable inferences that may be fairly drawn from the evidence. *Clarke v. Medley Moving & Storage, Inc.*, 381 Ill. App. 3d 82, 95 (2008). "The scope of closing argument is within the sound discretion of the trial court and the reviewing court will reverse only if the argument is prejudicial." (Internal quotation marks omitted.) *O'Neil v. Continental Bank, N.A.*, 278 Ill. App. 3d 327, 340 (1996).

¶ 39    First, we note that defense counsel's assertion that Cipolla was not fired was appropriate as that was the basis of the village's affirmative defense, namely that her position was eliminated as part of an overall restructuring of the finance department. Several witnesses at trial provided testimony to support this defense and witnesses stated that Cipolla was not "fired" for performance reasons but rather budget cuts led to the elimination of her position. Thus, defense counsel's comments were reasonably drawn from the evidence.

¶ 40    Furthermore, although Cipolla contends defense counsel made a false statement by stating that Cipolla must not have been fired because fired employees are not entitled to healthcare benefits, the record does not indicate that defense counsel knew this assertion was false. Plaintiff's attorney did not object to the statement during the trial and, thus, nothing in the record sheds light on whether the statement was knowingly false. But, even if defense counsel knew that this assertion regarding Cipolla's entitlement to village subsidized healthcare benefits was false, Cipolla is unable to show that she was prejudiced by it. The central issue in the case was whether the village terminated Cipolla because of her age and only used the budget as a pretext. Answers to the two special interrogatories establish that the jury found the village acted appropriately. Thus, because defense counsel's comments did not go to the central question–the reason for Cipolla's termination–Cipolla is unable to show that she was prejudiced by defense counsel's closing argument, and they do not constitute grounds for a new trial.

¶ 41                                Cat's Paw Liability Instruction

¶ 42    Cipolla next argues the trial court erred in refusing her request to give a cat's paw liability jury instruction to permit the jury to determine whether the village could be found liable for Hanigan's discriminatory motive in recommending her termination.

¶ 43    Whether to provide a particular jury instruction lies within the sound discretion of the trial court, and a reviewing court will not disturb that determination absent a clear abuse of discretion. *Webber v. Wight & Co.*, 368 Ill. App. 3d 1007, 1020-21 (2006). It is for the trial court to evaluate if a jury instruction is " 'applicable, supported by evidence in the record, and an accurate statement of the law.' " *Id.* at 1021 (quoting *Luye v. Schopper*, 348 Ill. App. 3d 767, 773 (2004)). Litigants are entitled to have the jury instructed as to their theory of the case, but the instructions they propose "must accurately state applicable law" for them to be given at trial. (Internal quotation marks omitted.) *Id.* Ultimately, no abuse of discretion can be established as long as "taken as a whole, the instructions fairly, fully, and comprehensively apprise[ ] the jury of the relevant legal principles" of the case. *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273-74 (2002). A new trial will be granted based on the court's refusal to give a proposed instruction only when that refusal has caused serious prejudice to a litigant's right to a fair trial. See *Stift v. Lizzadro*, 362 Ill. App. 3d 1019, 1026 (2005).

¶ 44    The cat's paw theory of liability seeks to hold an employer liable when a supervisory employee acts with discriminatory intent to cause a higher-up employee to take adverse action against the plaintiff. *Staub v. Proctor Hospital*, 562 U.S. 411, ___, 131 S. Ct. 1186, 1190 (2011). The employee with a discriminatory intent does not make the firing decision but influences another person who unwittingly fires the employee. To succeed under this theory, a plaintiff must show the nondecisionmaker exercised such " 'singular influence' " over the decisionmaker that the decision to terminate was the product of "blind reliance." *Id.*

at ___, 131 S. Ct. at 1190. (The term "cat's paw" comes from a fable by Aesop and is cited in the employment discrimination context in *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990). In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from the fire. After the cat does so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing. A coda to the fable observes that the cat is similar to princes who, flattered by the king, perform services on the king's behalf and receive no reward. *Staub*, 562 U.S. at ___ n.1, 131 S. Ct. at 1190 n.1.)

¶ 45 The evidence at trial did not warrant a cat's paw liability instruction, and thus, the trial court did not abuse its discretion in refusing to give it. Several witnesses, including Deetjen, Hurckes and Olejniczak, testified that Oak Lawn employed a village manager form of government and that Deetjen, as village manager, had the authority to make all personnel decisions. It is undisputed that department directors could make recommendations to Deetjen regarding hiring and firing of employees and that Hanigan, the finance department director, recommended that the finance department be reorganized by eliminating Cipolla's position and transferring her job responsibilities to another village employee. But there was no testimony or evidence indicating that Deetjen blindly relied on Hanigan when he decided to terminate Cipolla.

¶ 46 Moreover, for Cipolla's termination to become final, the budget amendments that proposed the elimination of the business licensing officer position, as well as three firefighter positions, had to be approved by a majority of the village board. Board members who voted in favor of the budget amendment testified their votes were in no way motivated by Cipolla's age. Thus, in the absence of clear evidence that Hanigan had a discriminatory intent and was a "singular influence" on Deetjen, a cat's paw liability instruction was not warranted.

¶ 47 Further, the trial judge did give plaintiff's jury instruction No. 18, which permitted the jury to find the village liable under an agency theory, namely, that because Hanigan, the village's agent, improperly discriminated against Cipolla, the principal, the village is liable. An additional cat's paw liability instruction was not necessary to permit the jury to find the village liable based on Hanigan's alleged discriminatory comments. Thus, Cipolla was not prejudiced by the trial court's decision not to give the cat's paw liability instruction.

¶ 48                    Denial of Motion *in Limine*

¶ 49 Cipolla contends she was denied a fair trial when the trial court allowed the village to present witnesses to deny that Hanigan made statements about Cipolla's age during the April 10, 2008 executive session, while simultaneously permitting the village to claim privilege under the Open Meetings Act (5 ILCS 120/1 *et seq*. (West 2012)) as a basis for not turning over the audiotape.

¶ 50 As noted above, Cipolla filed a motion asking the trial court to either compel the village to turn over a copy of the audiotape from the executive session or to bar the village from denying that Hanigan made a statement about Cipolla's age during the session. In her motion, Cipolla asked *in the alternative* that the trial court conduct an *in camera* inspection of the audiotape. The court granted the alternative relief requested and, after carefully reviewing the transcript and listening to the audiotape *in camera*, determined that no mention was made of Cipolla's age and that nothing of relevance to this case was said in the executive session. Thus, Cipolla was granted the relief she requested in her motion to compel or bar, and cannot argue that the trial court erred in denying her motion to compel.

¶ 51     We also do not find that the trial court erred in permitting the village to present witnesses who testified that Hanigan said nothing regarding Cipolla's age during the executive session. As Cipolla notes, before trial she filed a motion *in limine* asking the trial court to bar the village from presenting testimony denying that Hanigan made statements about Cipolla's age during the executive session or *in the alternative* to bar evidence and testimony relating to the tape of the April 10, 2008 executive session. Although the trial court's ruling on that motion is not evident from the record, given that several witnesses testified that Hanigan did not comment on Cipolla's age during the executive session and no witnesses testified about the tape, it appears the trial court granted the alternative relief Cipolla requested, *i.e.*, by barring any evidence or testimony relating to the audiotape. Thus, once again, Cipolla cannot be heard to complain that the alternative relief requested was granted.

¶ 52     Further, as the appellant, it is Cipolla's burden to present a sufficiently adequate record to support her claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). In the absence of an adequate record, it is presumed the trial court's order was in conformance with Illinois law. *Id*. Any doubts arising from the incompleteness of the record are resolved against appellant. *Id*. As noted, nothing in the record indicates how the trial court ruled on the motion *in limine* or the reasoning behind its ruling. Hence we presume the trial court's ruling was in compliance with Illinois law.

¶ 53                         Evidence Regarding Husband's Business

¶ 54     Cipolla next contends that evidence elicited by the village about the value of her husband's snack company was more prejudicial than probative and warrants a new trial. Specifically, plaintiff points to questions from defense counsel, over objection, regarding the revenue generated by her husband's company, the financial status of her husband's deceased former business partner, and where the company's products are sold and for how much. Plaintiff argues that none of this evidence was relevant to her claim of age discrimination and was intended to prejudice her by suggesting that her husband's business made so much money that plaintiff did not need her job at the village. She also contends the trial court erred in permitting the jury to take documents regarding her husband's business into the jury room, specifically the corporation's annual report filed with the Illinois Secretary of State, when that document was only used for impeachment purposes.

¶ 55     Evidence must be relevant to be admissible at a trial. *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49, 57 (2000). Evidence is only relevant if it proves a fact in controversy or renders a matter at issue more or less probable. *In re A.W.*, 231 Ill. 2d 241, 256 (2008).

¶ 56     We agree with plaintiff that evidence regarding the size and revenue of her husband's business was not directly relevant to her claim of age discrimination. But Cipolla had a duty to mitigate her damages by seeking employment. *ISS International Service System, Inc. v. Human Rights Comm'n*, 272 Ill. App. 3d 969 (1995) (party alleging employment discrimination required to make reasonable efforts to mitigate damages by seeking new employment). Cipolla testified that she was unable to find a position similar to the one she held at the village and became a paid employee at her husband's company in 2010. Cipolla described her husband's company as a small business and her position as "lesser" than the one she held at the village. To rebut the argument that Cipolla's damages may be greater based on her inability to find satisfying employment, it was proper for the village to question Cipolla about her current position with her husband's company, including the company's

revenues and sales to determine, for damages purposes, whether her job likely was less fulfilling than her prior position.

¶ 57    Thus, because the questions regarding Cipolla's husband's business were relevant to damages and plaintiff's efforts in mitigating them, the trial court did not err in permitting the village to elicit the evidence.

¶ 58    We also find that the trial court did not err in permitting the jury to take into the jury room the annual report for Cipolla's husband's company, which listed Cipolla as secretary/treasurer. Relying on *Esderts v. Chicago Rock Island & Pacific R.R. Co.*, 76 Ill. App. 2d 210, 229 (1966), Cipolla contends that documents used only for impeachment purposes may not go to the jury room. In admitting that document into evidence, the trial judge noted that it could be used substantively and not just for impeachment because Cipolla denied she was the corporation's secretary/treasurer. Thus, since the document was admitted into evidence, the trial court did not err in permitting the jury to take it into the jury room. But even if, as Cipolla contends, she never denied that she had a title with the company but simply stated that she had never seen the annual report before, the trial court did not err in permitting the jury to take the document to the jury room. A trial court has great discretion in deciding what documents to send to the jury room. *Brdar v. Cottrell, Inc.*, 372 Ill. App. 3d 690 (2007). The trial court did not abuse its discretion in permitting into the jury room a document that, as noted above, was relevant to the issue of mitigation of damages.

¶ 59                    Verdict Was Not Against Manifest Weight of the Evidence

¶ 60    Lastly, Cipolla contends the trial court's judgment should be reversed and the case remanded for a new trial because the verdict in the village's favor was against the manifest weight of the evidence. "A court of review is empowered to reverse a jury verdict only if it was against the manifest weight of the evidence." *Ford v. City of Chicago*, 132 Ill. App. 3d 408, 412 (1985). Typically, a verdict will be viewed as being against the manifest weight of the evidence "where it is palpably erroneous and wholly unwarranted [citation], is clearly the result of passion or prejudice [citation], or appears to be arbitrary, unreasonable, and not based upon the evidence [citation]." *Id.* In other words, "[w]hen considering whether a verdict was contrary to the manifest weight of the evidence, a reviewing court must view the evidence in the light most favorable to the appellee." *Id.*

¶ 61    Cipolla argues the evidence at trial did not support a finding that the village terminated her employment due to budget considerations. She contends the budget was not on the agenda for the April 10, 2008 executive session meeting and, moreover, could only have been discussed in a public meeting. She also asserts that Hanigan's comment that that she was "older" and the village's decision to hire a budget director and give finance department employees raises in 2008 after she was terminated, shows that the budget was only a pretext and that the real reason she was let go was her age.

¶ 62    Cipolla's arguments fail for a number of reasons. First, numerous witnesses testified that the village was having financial issues and needed to cut about $1.4 million from its budget, which supports a finding that the budget was not a pretext for terminating Cipolla. In addition, the primary evidence that the village terminated Cipolla because of her age were alleged statements by Hanigan that she was an "older" employee. But the testimony at trial as to whether Hanigan made that statement during the executive session was conflicting. Hurckes testified he heard Hanigan say that Cipolla was older and that he and Olejniczak

admonished Hanigan for the comment. Hanigan denied making any statement about Cipolla's age and Olejniczak denied hearing it or admonishing Hanigan. Several other board members also denied hearing the alleged comment and testified that they voted for the budget amendment for financial reasons and not because of Cipolla's age. These statements were further supported by the fact that Cipolla was not the only person to lose her job as a result of the budget cuts–three firefighter positions were eliminated too. The evidence was conflicting, without a doubt, but when viewed in a light most favorable to the appellee, the jury's finding that the village did not terminate Cipolla because of her age and only used the budget as a pretext was not against the manifest weight of the evidence.

¶ 63                                         CONCLUSION

¶ 64        We affirm the trial court orders entering judgment in favor of the village and denying Cipolla's motion for a new trial.

¶ 65        Affirmed.